<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| TELEBRANDS CORP. and BULBHEAD.COM, LLC, | |
| Plaintiffs, | No. 22cv4395 (EP) (LDW) |
| v. | **OPINION** |
| COOPER & DUNHAM, LLP; ROBERT MALDONADO, et al., | |
| Defendants. | |

**PADIN**, **District Judge.**

Plaintiffs Telebrands Corp. ("Telebrands") and Bulbhead.com, LLC ("Bulbhead") allege legal malpractice and related claims against their former lawyers, Defendants Cooper & Dunham, LLP ("C&D") and C&D attorney Robert Maldonado, stemming from Defendants' advice on patent matters. Defendants move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Defendants argue that Plaintiffs' claims are barred by the entire controversy doctrine because Plaintiffs failed to include the claims in an earlier, related malpractice action against the firm that replaced Defendants as counsel. For the reasons below, the Court will **GRANT IN PART** and **DENY IN PART** Defendants' motion.[1]

---

[1] The motion is decided without oral argument pursuant to Local Civil Rule 78.1.

I.       BACKGROUND

    A. Parties

Telebrands is a New Jersey corporation with its principal place of business in New Jersey. D.E. 1-1 ("Compl.") ¶ 2. Bulbhead is a Delaware limited liability company with its principal place of business in New Jersey. *Id.* ¶ 3. C&D is a New York-headquartered law firm. *Id* ¶ 5. Maldonado is a New York-licensed attorney and former C&D principal. *Id.* ¶ 4. Non-party Boies Schiller Flexner, LLP (the "Boies Firm"), who replaced C&D as lead counsel in litigation related to Plaintiffs' water balloon product Balloon Bonanza, was a defendant in a different action filed by Plaintiffs (the "Boies Action"). D.E. 1-2 ("Boies Compl.").

    **B. Defendants represent Plaintiffs in Balloon Bonanza patent infringement litigation**

In 2014, as Plaintiffs began marketing Balloon Bonanza, two other companies, Tinnus Enterprises, LLC and Zuru Limited ("Tinnus" and "Zuru") were already marketing a competing water balloon product called Bunch O Balloons. *Id.* ¶¶ 11-12; Boies Compl. ¶¶ 13-14. An intellectual property ("IP") dispute ensued: Tinnus and Zuru sought a patent, claimed that the forthcoming patent precluded Plaintiffs from selling Balloon Bonanza, and instructed retailers not to sell Balloon Bonanza. Compl. ¶ 13; Boies Compl. ¶ 5. In 2015, Tinnus and Zuru filed IP actions against Plaintiffs in this District asserting trademark and trade dress infringement. Compl. ¶ 14; Boies Compl. ¶ 16; Index Nos. 15cv548, 15cv8675.

In June 2015, the U.S. Patent and Trademark Office ("USPTO") issued the '066 Patent to Tinnus and Zuru for Bunch O Balloons. Compl. ¶ 15; Boies Compl. ¶ 17. Tinnus and Zuru then filed an IP action against Plaintiffs in the Eastern District of Texas alleging that Balloon Bonanza infringed the '066 Patent (the "Texas Action"). Compl. ¶ 16; Boies Compl. ¶ 18. Plaintiffs petitioned for post-grant review ("PGR") before the Patent Trial and Appeal Board ("Patent

Board") challenging the Patent.  Compl. ¶ 17; Boies Compl. ¶ 19.  In September 2015, the Texas Action district judge enjoined Plaintiffs from selling Balloon Bonanza and denied their motions to dismiss and transfer the action to this District.  Compl. ¶ 17; Boies Compl. ¶ 20.  C&D represented Plaintiffs as lead counsel only to this point.  Boies Compl. ¶ 20.

### C. The Boies Firm takes over as lead counsel

In December 2015, Plaintiffs hired the Boies Firm to "take control and leadership of the IP litigation, including overseeing and directing the role of C&D."  Boies Compl. ¶¶ 20-21.  According to the Engagement Letter between Plaintiffs and the Boies Firm, the latter would "have discretion to determine the appropriate ongoing role for [C&D]."  D.E. 4-4; Boies Action D.E. 1-8 at 73.  The Engagement Letter also provided for binding, confidential arbitration.  *Id.*

Plaintiffs allege that in late 2015, based on Defendant Maldonado's advice, they developed a second water balloon product called Battle Balloons.  Compl. ¶ 19.  According to Plaintiffs, Maldonado advised Plaintiffs that Battle Balloons would not infringe upon Tinnus and Zuru's existing or pending patents.  *Id.*[2]  Plaintiffs marketed and sold Battle Balloons; according to Plaintiffs, Maldonado's advice turned out to be incorrect and thus breached the applicable standard of care.  *Id.*  In the Boies Action, however, Plaintiffs alleged that it was attorney Boies himself who gave that advice.  Boies Compl. ¶ 22.

In January 2016, shortly after Plaintiffs began selling their second product Battle Balloons, the USPTO granted the '749 Patent to Tinnus.  Compl. ¶ 20.  The same day, Tinnus and Zuru filed a second infringement action against Plaintiffs in the Eastern District of Texas (the "Second Texas Action," together the "Texas Actions").  *Id.* ¶ 20.  Thereafter, the USPTO granted the '282 Patent

---

[2] As Defendants explain, this portion of the Complaint actually references Balloon Bonanza, but the context makes clear that Plaintiffs intended it to refer to Battle Balloons.  Mot. 4, n.3.

3

to Tinnus and Zuru. *Id.* Tinnus and Zuru then alleged in the Second Texas Action that Plaintiffs' Battle Balloons infringed the '282 Patent. *Id.*

During the Boies Firm's representation, from January 2016 through May 2018, Plaintiffs obtained favorable rulings from the Patent Board. Boies Compl. ¶¶ 24, 27, 37, 40. But during the same period, Plaintiffs received unfavorable rulings in the Texas Actions. Boies Compl. ¶¶ 30, 42, 45; Compl. ¶ 21.

**D. Plaintiffs' litigation founders and they settle**

The Texas Actions and Patent Board rulings were appealed to the Federal Circuit, where things did not go Plaintiffs' way. In January 2017, the Federal Circuit affirmed the First Texas Action's 2015 preliminary injunction ruling against Plaintiffs. Boies Compl. ¶ 38; *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190 (Fed. Cir. 2017). In May 2018, the Federal Circuit affirmed the Second Texas Action's preliminary injunction rulings against Plaintiffs related to Plaintiffs' second-generation (Battle Balloons) and third-generation (Easy Einstein Balloons) water balloon products. Boies Compl. ¶¶ 26, 41, 42, 46; Compl. ¶ 22; *Tinnus Enters., LLC v. Telebrands Corp.*, 708 F. App'x 1019, 1020 (Fed. Cir. 2018) (*per curiam*); *Tinnus Enters., LLC v. Telebrands Corp.*, 709 F. App'x 704, 704 (Fed. Cir. 2018) (*per curiam*). The Federal Circuit also reversed the Patent Board's favorable ruling as to the '066 Patent. Boies Compl. ¶ 49. *Tinnus Enters., LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1012 (Fed. Cir. 2018).

Plaintiffs' lead attorney during the Second Texas Action's trial in November 2017 was Boies Firm attorney D. Michael Underhill. Boies Compl. ¶ 45. On the eve of trial, on the advice of Underhill, Plaintiffs stipulated to their infringement on all three claims related to the '282 Patent. Boies Compl. ¶ 43. The jury found that Tinnus and Zuru's patents were valid and that Plaintiffs had willfully infringed the '749 Patent (the other patent at issue) and awarded over $12.25 million

in damages. Boies Compl. ¶ 45; Compl. ¶ 21. In March 2019, the district judge awarded enhanced damages of nearly $29.4 million against Plaintiffs. Boies Compl. ¶¶ 47, 48, 51; Compl. ¶¶ 23-25. Plaintiffs claim that they were "forced to enter into a confidential global settlement with Tinnus and Zuru" because Plaintiffs were unable to post a sufficient appeal bond. Compl. ¶ 26; Boies Compl. ¶ 52.

### E. Plaintiffs sue the Boies Firm

In May 2020, Plaintiffs sued the Boies Firm and two of its attorneys, David Boies and D. Michael Underhill, in New Jersey state court. D.E. 4-3 (the "Boies Action"). The Boies Firm demanded arbitration, Plaintiffs moved to enjoin arbitration, and the Boies Firm removed the case to this Court and cross-moved to stay pending arbitration. *See* Boies Action at D.E.s 1-8, 13. On July 6, 2020, Plaintiffs and the Boies Firm stipulated to resolve all claims and counter-claims in binding arbitration (the "Boies Arbitration"). *Id.* at D.E. 4-5.

### F. Dermasuction

Separately, Plaintiffs allege that Defendants provided erroneous advice that a different product, Dermasuction (used for cleaning skin pores and microdermabrasion) did not violate any patents. Compl. ¶¶ 27, 45. Altair Instruments sued Plaintiffs for infringement. *See Altair v. Telebrands*, No. 19cv8967 (C.D.CA). After three years of litigation, the matter settled for $1.4 million on April 1, 2022. *Id.* at D.E. 335; Compl. ¶¶ 45-46. Like the Battle Balloons matter, Plaintiffs allege that Defendants' incorrect advice caused the litigation and unfavorable settlement.

### G. This action and motion

Plaintiffs filed this action in New Jersey Superior Court. The Complaint alleges six counts:

- Count One: legal malpractice based on Defendants' Battle Balloons advice;
- Count Two: breach of fiduciary duty based on Defendants' Battle Balloons advice;
- Count Three: legal malpractice based on Defendants' Dermasuction advice;
- Count Four: breach of fiduciary duty based on Defendants' Dermasuction advice;

5

- Count Five: C&D's vicarious liability for Maldonado's conduct; and
- Count Six: unjust enrichment in light of Defendants' alleged malpractice as to Battle Balloons and Dermasuction.

Defendants removed the matter to this Court and promptly moved to dismiss all claims based on the entire controversy doctrine. D.E. 4. Plaintiffs oppose. D.E. 11. Defendants have replied. D.E. 14.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears

that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Solutions, LLC*, 2010 U.S. Dist. LEXIS 131357, at *1 (D.N.J. Dec. 13, 2010).

The court may consider the allegations of the complaint, as well as documents attached to or specifically referenced in the complaint, and matters of public record. *See Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 259 (3d Cir. 1998). Courts may also take judicial notice of other court proceedings and opinions. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999) ("Specifically, on a motion to dismiss, we may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.").

### III. ANALYSIS

#### A. The Court can consider Boies Action docket entries

As an initial matter, the Court may consider the Boies Action complaint and other documents filed on that docket. Whether or not Plaintiffs explicitly reference the Boies Action in their Complaint, the Court may consider "integral" or "undisputedly authentic" items beyond the four corners of the Complaint without converting this motion to dismiss into one for summary judgment, particularly where the non-movant does not dispute authenticity.[3] *Pension Benefit Guar. Corp. v. White Consol. Ind., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Authentic documents have been characterized as documents to which "the public had unqualified access," including copies of pleadings and other materials filed in courts" and state court opinions. *Caldwell Trucking PRP Group v. Spaulding Composites Co., Inc.*, 890 F. Supp.

---

[3] Indeed, Plaintiffs recognize as much, encouraging the Court to consider the Altair docket. Opp'n 5, n.4.

1247, 1252 (D.N.J. 1995); *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (courts may consider matters of public record, indisputably authentic documents, and court orders); *Wishnia v. U.S. Bank Nat'l Ass'n*, No. 20-07898, 2021 U.S. Dist. LEXIS 44736, at *9 n.7 (D.N.J. Mar. 10, 2021) (considering publicly available court filings and the integral mortgage documents referenced in complaint and attached to motion to dismiss, the authenticity of which plaintiffs did not dispute); *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426-27 (3d Cir. 1999) (courts may take judicial notice of other courts' opinions not for the truth of the facts therein, but for the existence of the opinion). Here, the Court considers documents from the Boies Action and other litigation not for the truth of what they assert (whether the Boies Firm or Defendants advised Plaintiffs incorrectly), but whether the allegations in the Boies Action and this one overlap.

### B. Standards governing the entire controversy doctrine

The entire controversy doctrine bars claims which could have been asserted in a prior matter. N.J. Ct. R. 4:30A, which codifies the entire controversy doctrine, provides in relevant part that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims." A related provision, Rule 4:5-1(b)(2), requires parties to disclose in their initial pleadings "whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding" and "whether any other action or arbitration proceeding is contemplated." The entire controversy doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court" and "requires litigants to assert all affirmative claims relating to the controversy between them in one action, and to join all parties with a material interest in the controversy." *Sack v.*

*Tsokantas*, No. 20-09693, 2021 U.S. Dist. LEXIS 138580, at *5 (D.N.J. July 26, 2021) (quoting *Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7 (1989)).

The entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). "[A] party cannot withhold part of a controversy for later litigation even when the withheld component is a separate and independently cognizable cause of action." *In re Mullarkey*, 536 F.3d 215, 229 (3d Cir. 2008) (citing *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999)). "In essence, it is the factual circumstances giving rise to the controversy itself, rather than a commonality of claims, issues or parties, that triggers the requirement of joinder to create a cohesive and complete litigation." *Mystic Isle Development Corp. v. Perskie & Nehmad*, 142 N.J. 310, 323 (1995) (citing *Ditrolio v. Antiles*, 142 N.J. 253, 272 (1995)). The "polestar of the application of the rule is judicial fairness." *Oliver v. Ambrose*, 152 N.J. 383, 396.

Distilled, Defendants argue that the Battle Balloons and Dermasuction malpractice allegations against them in this action should be barred because they could have been asserted in the Boies Action. The Court addresses each in turn.

### C. The entire controversy doctrine bars the Battle Balloons claims against Defendants

Plaintiffs' Counts One, Two, Five, and Six allege Defendants' alleged deficient advice about marketing Battle Balloons despite Tinnus and Zuru's patent. The allegations share a common core: someone misadvised Plaintiffs that they should go to market with multiple water balloon products that infringed Tinnus and Zuru's water balloon patents. Compl. ¶¶ 19-20; Boies Compl. ¶¶ 21, *et seq.* Whatever differences the individual complaints may have, the substantive allegations in the Complaint here repeat those in the Boies Complaint verbatim, including

allegations of conduct that clearly occurred when the Boies Firm was lead counsel—for example, advice regarding the re-design of the second and third-generation balloon products. *Compare* Compl. ¶¶ 32-36 *with* Boies Compl. ¶¶ 54-57. The complaints unquestionably share a common factual core.

Plaintiffs' opposition is significant for what it does not include: any dispute that the complaints overlap substantially. Instead, Plaintiffs make three arguments that their claims are not barred by the entire controversy doctrine. None of the arguments are persuasive.

### 1. Ditrolio *remains good law*

Plaintiffs' first argument is that *Ditrolio v. Antiles*, 142 N.J. 253, cannot be relied upon because R. 4:30A's prior requirement of joinder of "claims *or* parties" has been amended to require only joinder of claims. Pressler & Verniero, *Current N.J. Court Rules*, cmt. 1 to R. 4:30A (2022) ("There is no mandatory party joinder requirement under the entire controversy doctrine."). Plaintiffs are mistaken; though mandatory joinder of parties is no longer required, *Ditrolio* remains good law as it pertains to joinder of related claims. *See Ricketti v. Barry*, 775 F.3d 611, 613-14 (3d Cir. 2015) (summarizing the change in the entire controversy doctrine); *Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.*, 237 N.J. 91, 100 (2019) (citing favorably to *Ditrolio*).

### 2. *The entire controversy doctrine remains applicable even if the Boies Action went to arbitration*

Second, Plaintiffs argue that the entire controversy doctrine is inapplicable because Defendants, unlike the Boies Firm, were not subject to mandatory arbitration, and were therefore not subject to joinder in the Boies Arbitration. Plaintiffs are indeed correct that arbitration is "strictly a matter of contract," meaning that, "[i]f a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Bel-Ray Co., Inc. v. Chemrite Ltd.*, 181 F.3d 435,

444 (3d Cir. 1999) (citation omitted).  According to Plaintiffs, Defendants "had no interest in being part of an arbitration that potentially could have found them liable for malpractice."  Opp'n 11 (citing Iyer Cert.[4] ¶ 3, Mazie Cert.[5] ¶ 2).

Defendants reply with two arguments: (1) Plaintiffs' claims against Defendants could have been raised in the Boies Arbitration; and (2) the Boies Action, which led to the Boies Arbitration, should likewise be considered for entire controversy doctrine purposes.

First, Defendants argue that the Court should not consider Plaintiffs' certifications averring that Defendants had no interest in joining the Boies Arbitration, and in any event that JAMS rules contain a mechanism to compel third parties to join arbitration proceedings.  But even if the certifications were accurate, and even if the  JAMS arbitration rules provide a mechanism—which Plaintiffs did not utilize—to compel third parties to participate in pending arbitrations, that mechanism would not have forced Defendants into arbitration without their consent or some other third-party exception.  *See P&A Constr. Inc. v. Int'l Union of Operating Eng'rs Local 825*, 19 F.4th 217, 232 (3d Cir. 2021) (parties should not be forced to arbitrate under agreements they did not join because forcing arbitration without consent "eviscerates not only [arbitration's] legal root but also its greatest source of strength, promoting as it does the acceptability of awards by the parties."); *Nat'l Union Fire Ins. Co. v. Beelman Truck Co.*, 203 F. Supp. 3d 312, 321 (S.D.N.Y. 2016) (noting five non-applicable circumstances permitting non-signatory arbitration: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel). Because Plaintiffs could not have been forced into arbitration, the Court cannot conclude that the Battle Balloons claims against Defendants could (or should) have been raised there.

---

[4] Certification of Bala Iyer, Plaintiffs' Executive Vice President and Chief Operation Officer.  D.E. 11-1.
[5] Certification of David A. Mazie, Plaintiffs' counsel in the Boies arbitration.  D.E. 11-2.

Defendants find more success on their related second argument: that the claims here should be measured not against (or at least not *solely* against) what occurred in the Boies Arbitration, but the Boies Action leading to it. Indeed, Plaintiffs do not dispute, and thus concede, that this action and the Boies Action/Arbitration share a common core of facts with what is claimed here. Specifically, both allege that Plaintiffs were represented by Defendants in the IP Litigation until December 2015, at which time they retained the Boies Firm to act as lead counsel until March 2019. *See* Compl. ¶¶ 11-25; Boies Compl. ¶¶ 20-21.

Thus, Plaintiffs knew all of the facts and possible causes of action well before they initiated the Boies Action, before Plaintiffs' hand was forced and they were compelled into arbitration.[6] And those facts and claims overlap substantially with those in the Boies Action: Defendants misadvised Plaintiffs to bring a product to market which infringed upon Tinnus and Zuru's Bunch O Balloons IP. Thus, the claims could have been brought in the Boies Action.[7] *See Spolitback v. Cyr Corp.*, 295 N.J. Super. 264, 270, 684 A.2d 1021 (App. Div. 1996) (homeowners barred from litigating improper construction claims not submitted to arbitration where the claims were known, "ripe and amenable" at the time of arbitration).

---

[6] Notably, Plaintiffs opposed arbitration, referring to the Boies Firm retainer agreement's arbitration clause as "unenforceable." Boies Action D.E. 1-8 at 54, 59, 63. In other words, Plaintiffs believed that the matter should have stayed in court where, unlike contractual arbitration, joining Defendants was likelier.

[7] As discussed in more detail below, even if the arbitration went forward against Boies only, courts have various tools to manage cases, including a stay as to Defendants while arbitration proceeded against the Boies Firm. *See Neal v. Asta Funding, Inc.*, Civ. No. 13-3438, 2014 U.S. Dist. LEXIS 64349, 2014 WL 131770, at *4 (D.N.J. Jan. 6, 2014) (staying the entire case pending arbitration of some of the plaintiff's claims in a complaint, where "[t]he substantive issues that either are being decided or are subject to being decided in arbitration are intertwined with the claims asserted in the Complaint, and may affect their resolution"); *Capers v. Quest Capital Strategies, Inc.*, Civil Action No. 06 5780, 2007 U.S. Dist. LEXIS 50028, 2007 WL 2033831, at *4 (D.N.J. July 10, 2007) ("Courts typically grant stays when there are both arbitrable and non-arbitrable claims in the same action and significant overlap exists between the parties and the issues.").

        3.     *Plaintiffs' failure to include Defendants in the Boies Action was inexcusable and prejudiced Defendants*

Plaintiffs' third argument against applying the entire controversy doctrine is that their non-disclosure of the Boies Action was not inexcusable and that Defendants have not been substantially prejudiced.

New Jersey Court Rule 4:5-1(b)(2) obligates a party to advise the court of other related matters or potentially necessary parties. Specifically, the Rule requires that a pleader give notice "as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, . . . the identi[t]y [of] such actions and all parties thereto." *Id.* The Rule also requires that the pleader "disclose…the names of any non-party who should be joined…or who is subject to joinder…because of potential liability to any party on the basis of the same transactional facts." *Id.*

The notification requirement of Rule 4:5-1(b)(2) is a "key tool[] in the Rules of Court to promote compliance with the entire controversy doctrine." *Glenmore Mgmt. v. Ris Constr. Corp.*, 2021 N.J. Super. Unpub. LEXIS 2583 at *12 (App. Div. 2021). However, the New Jersey Supreme Court has recognized a "strong preference for adjudication on the merits rather than final disposition for procedural reasons." *Galik v. Clara Maass Med. Ctr.*, 167 N.J. 341, 356 (2001) (quoting *Mayfield v. Cmty. Med. Assocs., P.A.*, 335 N.J. Super. 198, 207 (App. Div. 2000)). Thus, "[o]utright dismissal of a civil action for failure to comply with Rule 4:5-1(b)(2) is appropriate only when: (1) the suit is a 'successive action'; (2) the plaintiff's failure to disclose the existence of other potentially liable parties in the earlier litigation was 'inexcusable'; and (3) the undisclosed parties' right to defend the successive action was 'substantially prejudiced' by their omission." *Ricketti,* 775 F. 3d at 615 (quoting *Kent Motor Cars*, 25 A.3d at 1034; N.J. Ct. R. 4:5-1(b)(2)).

13

For the reasons above, this is a "successive action" because it "arise[s] from the same series of transactions" as the first action. *See Mocco v. Frumento*, No. 12cv1458, 2016 U.S. Dist. LEXIS 179019, at *27 (D.N.J. Dec. 23, 2016). As to the other two factors, the party invoking the entire controversy doctrine has the burden of establishing both inexcusable conduct and substantial prejudice under Rule 4:5-1(b)(2). *Nuamah-Williams v. Frontline Asset Strategies, LLC,* 2022 U.S. Dist. LEXIS 56069, *6-7 (D.N.J. March 28, 2022). Inexcusable conduct and substantial prejudice "are, in a sense, inter-related. They are different points along a graded spectrum, but it is the final result they produce which must be weighed in deciding whether fairness requires that a party be precluded from presenting its claim." *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 354 N.J. Super. 229, 244 (App. Div. 2002).

In determining whether inexcusable conduct and substantial prejudice exist, this Court considers the following non-exhaustive list of factors:

1. Whether the person not joined in an earlier action is precluded from seeking recovery in a subsequent action;
2. Whether a person so precluded can nevertheless be alternatively compensated;
3. Whether the failure to join or identify…a person was part of a strategy to thwart the assertion of a valid claim;
4. Whether the failure to join or identify a person was unreasonable under the circumstances;
5. Whether a person not joined in an action would be charged with constructive knowledge of that action;
6. The extent to which judicial resources were employed in the earlier litigation; and
7. Whether a person not joined in the earlier action might be unfairly hampered in their ability to mount a defense, e.g., due to loss of evidence, the running of an applicable period of limitation, or other prejudice.

*Center for Prof'l Advancement v. Mazzie*, 347 F. Supp. 2d 150, 156 (D.N.J. 2004) (citing *Hobart*, 806 A.2d at 818-19).

14

"Substantial prejudice" has been interpreted to mean that a person not joined in an earlier action will be seriously harmed in his or her ability to maintain an adequate defense in a subsequent action. *Mitchell v. Charles P. Procini, D.D.S., P.A.,* 331 N.J. Super. 445, 454 (App. Div. 2000). Such harm might come about through "loss of witnesses, loss of evidence, fading memories, and the like," although "delay alone does not serve to create substantial prejudice." *Id.* Rather, delay generally results in substantial prejudice only when coupled with unavailability of information caused by that delay. *Mazzie*, 347 F. Supp. 2d at 156. Accordingly, "a party's access to relevant information is largely dispositive of the substantial prejudice issue." *Mitchell*, 331 N.J. Super. 445 at 454; *see also K-Land Corp. No. 28 v. Landis Sewerage Auth.*, 173 N.J. 59, 75 (2002) (claim in later litigation should be no more difficult to defend against than it would have been if asserted in the earlier suit).

The Court acknowledges the potential prejudice against both Defendants *and* the Boies Firm resulting from the piecemeal litigation. Though Defendants produced their entire Battle Balloons file in connection with the Boies Arbitration, and had an obligation to maintain their files for seven years after 2019, when the Eastern District of Texas granted Zuru's motion for enhanced damages, Defendants note correctly that memories will certainly have faded after an additional two years of litigation between 2020, when the Boies Action was filed, and 2022, when this action was filed—in total, about five and seven years, respectively, after the alleged malpractice. *See Batista v. City of Perth Amboy*, No. 15-2833, 2020 U.S. Dist. LEXIS 49993, at *18-19 (D.N.J. Mar. 23, 2020) (finding prejudice where alleged theft occurred more than eight years prior, and successive suit filed four years after initial incident) (citing *Alvarez v. Borough of Hoboken*, No. A-4534-10T3, 2013 N.J. Super. Unpub. LEXIS 2055, at *14 (App. Div. Aug. 16, 2013) (finding that defendant was substantially prejudiced where over five years had passed between the incident

and filing of successive suit)). Moreover, Defendants were denied a meaningful opportunity to participate in the Boies Action and Arbitration, as well as any settlement discussions that could have saved the parties, and this Court, significant resources. *See Keltic Fin. Partners, LP v. Krovatin*, No. 05-4324, 2007 U.S. Dist. LEXIS 23623, at *27 (D.N.J. Mar. 29, 2007) (defendants' absence from settlement negotiations resulted in prejudice because the apparent inadequacy of that settlement was the plaintiff's sole motivation for bringing suit against defendants).

Also counseling for preclusion is the undisputed fact that Plaintiffs' attorney filed the Boies Complaint in state court with a Rule 4:5-1(b)(2) Certification that failed to identify either Defendants or the potential claims against them. Boies Compl. 24. This was done notwithstanding that Plaintiffs knew of Defendants, knew that Defendants gave them allegedly incorrect legal advice as to whether Battle Balloons infringed Tinnus and Zuru's patents, and knew that Defendants were lead counsel until 2015, when the Boies Firm took over. The Court can discern no reasonable explanation—nor do Plaintiffs provide one—why Plaintiffs could not have named Defendants in the Boies Action with the Boies Firm. This counsels in favor of finding that Plaintiffs engaged in an intentional strategy of piecemeal litigation, *i.e.,* to try their luck in the Boies Action, and then try again here if they did not obtain full recovery against the Boies Firm.

Similarly, while the entire controversy doctrine does not require that all claims and parties culminate in one litigation, it is for courts, not parties, to determine how to proceed with various claims and parties because Rule 4:5-1 requires disclosure for reasons not limited to joinder, which is just one goal of the entire controversy doctrine. *Petrocelli v. Daniel Woodhead Co.,* 993 F.2d 27, 31 (3d Cir.1993); *Gelber v. Zito P'ship*, 147 N.J. 561, 566 (1997). "Quite aside from joinder of the controversies in either the arbitral or judicial forum, a trial court, once informed of related actions, can employ various procedural tools to prevent excessively complicated or unfair

16

litigation." *Id.* (citing *Zirger v. General Accident Ins. Co.,* 144 N.J 327 (1996) (authorizing modification of arbitration agreement to limit duplicative litigation)). For example, courts can clarify issues through stipulations or authorize "discovery relating to the nature of the claims being addressed in the arbitration proceedings (including the extent to which the claims overlapped or paralleled those in the judicial proceedings)." *Gelber,* 147 N.J. at 566 (1997); *see also Brown v. Brown,* 208 N.J. Super. 372, 381 (App. Div. 1986) ("[trial] court, rather than litigant acting unilaterally, must make determination of whether supplementary claim is to be joined or reserved")).

Litigating this matter in 2020, when the Boies Action was filed, may have been complex. For example, the matter may have involved a stay pending the conclusion of the Boies Arbitration, or a request for discovery regarding the substance of the arbitration proceedings or settlement agreement, including settlement amounts relevant to the issues of offsets or the question of any release of liability. *See, e.g., Jaggard v. Abbott Cardiovascular Sys.,* No. 3:21-CV-00360, 2022 U.S. Dist. LEXIS 182216, at *3 (D. Nev. Oct. 5, 2022).

But Plaintiffs acted unilaterally to deprive this Court the opportunity to manage its own docket, and Defendants the opportunity to participate in the Boies Action or Arbitration. *Petrocelli,* 993 F.2d at 31 ("Under the entire controversy doctrine…courts and not private parties have the authority to decide whether equitable considerations justify separate trials."). "A plaintiff's failure to allow the trial court the opportunity to manage the full controversy at the outset diminishes the force of any later claim that joinder would have been inappropriate." *Ditrolio*, 142 N.J. at 274-75 (1995)*; Petrocelli,* 993 F.2d at 31; *Brown,* 208 N.J. Super. at 382. Plaintiffs' failure to include Defendants in the Boies Action likewise deprived Defendants of their own opportunity to chart their own litigation course, including the choice of whether to participate in the Boies

Arbitration.  *See, e.g. Ditrolio*, 142 N.J. at 273 (holding that doctors, although represented by counsel at depositions, might have approached the depositions and discovery process differently if they had been named parties).

Despite this Court's substantial authority, it cannot rewind the clock to 2020, when Plaintiffs crafted this procedural pretzel by failing to name Defendants in the Boies Action.  Their failure to name Defendants, when their involvement and alleged malpractice was clearly known, summons the entire controversy doctrine to bar Plaintiffs' Battle Balloons claims as a matter of equity.  Accordingly, those claims will be dismissed with prejudice.

### D. The entire controversy doctrine does not bar the Dermasuction claims

Finally, Defendants also seek dismissal of the Dermasuction claims: Counts Three, Four, and portions of Five and Six.  The claims essentially allege that Defendants misadvised Plaintiffs about marketing Dermasuction when it violated Altair's patent.  Altair's suit against Plaintiffs was resolved in April of 2022.

The Court utilizes the same analysis as above, but reaches a different conclusion; the legal theories may be similar, but the facts are distinct.  The alleged Dermasuction advice has absolutely no connection to the Battle Balloons IP Litigation, the Boies Action, or the Boies Arbitration.  The only connection between the two, as Defendants acknowledge, is that Defendants gave advice about both Dermasuction and Battle Balloons.  Reply 21.  It is not, as Defendants urge in reply, "part of" the Battle Balloons controversy.  *Id*.  Accordingly, the Court declines to dismiss the Dermasuction claims.

### IV.   CONCLUSION

For the reasons above, Defendants' motion will be **GRANTED IN PART** and **DENIED IN PART** and the Court will **DISMISS** Plaintiffs' Counts One and Two, and the portions of Counts Five and Six pertaining to the Battle Balloons IP Litigation.

Dated: March 20, 2023

                                                                                   Evelyn Padin, U.S.D.J.